# AFFIDAVIT IN SUPPORT OF A WARRANT AUTHORIZING THE INSTALLATION AND MONITORING OF A TRACKING DEVICE

I, Galen E. Doud, Special Agent with the U.S. Drug Enforcement Administration (DEA), being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. As a DEA Special Agent, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C); that is, a government agent engaged in enforcing the criminal laws, and duly authorized by the Attorney General to request a search warrant. I am also authorized to investigate violations of laws of the United States of America, including violations of federal narcotics laws in Title 21 of the United States Code. I am also an "investigative law enforcement officer" within the meaning of 18 U.S.C. § 2510(7); that is, an officer of the United States empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2. I have been a Special Agent with the DEA since May of 2017. I attended Basic Agent Class 211 at the DEA Training Academy located in Quantico, Virginia, and successfully graduated from DEA's Basic Agent academy training program in October of 2017. I have been assigned to the DEA Manchester, New Hampshire District Office of the New England Field Division since November of 2017. While attending the DEA Training Academy, I received training on a multitude of topics pertaining to drug investigations. My primary duties as a DEA Special Agent include investigating federal crimes and violations of the Controlled Substances Act at the local, national, and international level. I have been involved in numerous drug investigations, and I have participated in both physical and electronic surveillances, the purchase of illegal drugs, enforcement operations including the execution of both search warrants and arrest

1

warrants, and interviews of sources of information, confidential sources ("CSs"), drug traffickers, and drug trafficking organizations ("DTOs").

3. Prior to being employed as a DEA Special Agent, I was employed as a full time police officer with the City of Nashua, New Hampshire Police Department for approximately four and one half years. I attended the New Hampshire Police Standards and Training Council 160th Full Time Police Officer Academy located in Concord, New Hampshire, and successfully graduated from the New Hampshire Police Standards and Training Council's Full Time Police Officer Academy training program in April of 2013. During my time as a Nashua police officer, I was assigned to the Uniform Field Operations Bureau. I made several hundred arrests and initiated, conducted, and assisted in even more criminal investigations, many of which involved drug violations. I worked as a police officer in a uniformed and plain clothed capacity, and debriefed numerous defendants and cultivated many sources of information and confidential sources pertaining to drug trafficking organizations.

4. Additionally, I am a member DEA's Clandestine Laboratory Enforcement Team, and received over two weeks of specialized training in clandestine laboratory investigations and enforcement operations. I have also attended multiple trainings about illegal drugs, drug related investigations, and relevant officer safety topics associated with drug investigations, hosted by DEA and other law enforcement agencies. I have a Bachelor of Science degree in Criminal Justice from Northeastern University.

5. Based on my training, education, and experience, I am familiar with the manner and means commonly employed by drug traffickers and drug trafficking organizations to conduct their illegal activities, including purchasing, manufacturing, storing, and distributing controlled substances, the laundering of illegal proceeds, and the efforts of persons involved in such

activities to avoid detection by law enforcement. I am also familiar with the terminology and slang commonly employed by drug traffickers. I have observed and examined cocaine, cocaine base ("crack"), heroin, marijuana, methamphetamine, oxycodone, and fentanyl as well as other controlled substances. I am aware of the prices commonly charged on the street for these substances, the method of packaging, and the jargon used in the drug trade.

6. Based on my training, experience, and involvement in other criminal investigations, I know that individuals who distribute controlled substances often utilize motor vehicles in order to obtain quantities of controlled substances from their source of supply for distribution. I also know that individuals who are engaged in the distribution of controlled substances utilize motor vehicles in order to transport controlled substances to various locations in order to meet with and distribute controlled substances to potential drug purchasers. Because individuals who are involved in the distribution of controlled substances are highly cognizant of the presence of law enforcement, and often engage in counter-surveillance maneuvers while traveling in a motor vehicle, it is frequently difficult for law enforcement to effectively conduct surveillance. The presence of a tracking device on a motor vehicle being utilized for the distribution of controlled substances is beneficial because it allows law enforcement to track the movement of the vehicle effectively and to decrease the chance of detection.

7. I make this affidavit, pursuant to Federal Rules of Criminal Procedure 41, and Title 18, United States Code, Section 3117, in support of an application for a search warrant authorizing the installation and use of a tracking device, for a forty-five (45) day period, on a 2011 blue Nissan Altima bearing New Hampshire registration 3817792, vehicle identification number (VIN) 1N4AL2AP1BC174704 ("Target Vehicle"), registered to Maria APONTE ("APONTE"),

New Hampshire and operated by Jonathan SANTIAGO ("SANTIAGO") aka Jonathan SANTIAGO-PEREZ.[1]

8. This affidavit does not set forth all of the facts developed during the course of this investigation. Rather, it sets forth only those facts that are necessary and sufficient to establish probable cause for the issuance of the requested warrant. Based on my training and experience, and the facts set forth in this affidavit, there is probable cause to believe that the targets of the investigation, SANTIAGO, APONTE, and others unknown, are engaged in drug trafficking that constitute violations of 21 U.S.C. § 841 (distribution and possession with intent to distribute a controlled substance); and 21 U.S.C. § 843(b) (use of a communication facility to facilitate a controlled substance offense). I also have probable cause to believe that SANTIAGO uses the Target Vehicle in furtherance of the aforementioned criminal violations. Accordingly, I believe that there is probable cause to believe that the installation and use of a tracking device on the Target Vehicle for a 45 day period, will lead to evidence, fruits and instrumentalities of the aforementioned crimes as well as to the identification of other individuals who are engaged in the commission of the above mentioned crimes and related violations of the law.

## PROBABLE CAUSE

9. This is an investigation into SANTIAGO, a suspected drug trafficker from Claremont, New Hampshire, who is selling cocaine and crack cocaine to customers in New Hampshire and Massachusetts. A criminal record check of SANTIAGO revealed that he was convicted in the State of Massachusetts on December 6, 2012 for two offenses of Distribute/Dispense Class A Drug- Heroin in the Hampden Superior Court.

---

[1] A New Hampshire Department of Motor Vehicles query of this male's driver's license reveals the name Jonathan SANTIAGO, whereas the same query in the Massachusetts Registry of Motor Vehicles database reveals the name Jonathan SANTIAGO-PEREZ.

10. In November of 2018, the Massachusetts State Police Commonwealth Interstate Narcotics Reduction Enforcement Team (CINRET—West) was investigating the distribution of cocaine and heroin in the Springfield, Massachusetts area by David CLASS and others. The Massachusetts investigation included the use of multiple court authorized intercepts of both oral telephone and text communications on numerous targets engaged in drug trafficking at various levels of distribution. This investigation to date has resulted in, among other things, the seizure of suspected cocaine, heroin, United States currency, multiple firearms, including at least one each reported stolen out of New Hampshire and Texas, and the identification of others involved with this Drug Trafficking Organization. The Massachusetts investigation is ongoing, and all seized drugs thus far have been sent to the Massachusetts State Police laboratory. The analysis of the seized substances are pending, and were not field tested due to the lethal risks posed to law enforcement when testing unknown substances.

11. As a part of that investigation, law enforcement obtained authorization to intercept communications occurring over telephone number         7361 (the "7361 number"), a number used by CLASS. Based on communications intercepted on the 7361 number, investigators identified        9301 (the "9301 number") as a telephone number used by one of CLASS's sources of cocaine supply (later determined to be SANTIAGO).

12. On December 10, 2018, the following communications occurred between the 7361 number and the 9301 number:

SANTIAGO text to CLASS<br>(        9301) to (        7361)

Session #612: 12:31 p.m.
"Call"

CLASS call to SANTIAGO

Session #621: 12:51 p.m. (*Spanish portions synopsized by H.C.N.T.F. analyst in italics*)

5

**SANTIAGO**: Yo.
**CLASS**: Yo.
**SANTIAGO**: What's up, what's up yo?
**CLASS**: What's going on?
**SANTIAGO**: Yo, *I have you one-two-fifty*.
**CLASS**: *One-two-fifty?*
**SANTIAGO**: *Yes, one-two-fifty.  I told you I was going to give it to you for thirty-two, the other time – the last one was three-three something, something like that, right*?
**CLASS**: *Damn* yeah you got me 'cause you said you were gonna drop it one and you didn't. I did the math because *you gave it to me last time for three-three so* minus one it would have been *three-two*, you know?
**SANTIAGO**: *All right, I'm going to give that to you for three-two to deal with you.  You heard*?
**CLASS**: Ah?
**SANTIAGO**: *That I'm going to leave it at three-two*.
**CLASS**: *Ah, for tomorrow*?
**SANTIAGO**: *Yes*.
**CLASS**: Okay.
**SANTIAGO**: *All right then, I'll see you tomorrow afternoon*.
**CLASS**: *All right*.
**SANTIAGO**: All right.

As noted above, the Spanish portions of these communications were translated by a Spanish speaking National Guard analyst assigned to the Hampden County Narcotics Task Force, as well as a Spanish speaking police officer in Massachusetts.  Based on my training and experience, and the training and experience of the officers involved with the underlying investigation, these communications are consistent with arranging drug transactions.

13. On December 11, 2018, the following communications occurred between the 7361 number and the 9301 number:

SANTIAGO call to CLASS
(          9301) to (          7361)

Session #1049: 3:27 p.m. (*Spanish portions synopsized by H.C.N.T.F. analyst in italics*)
**CLASS**: Hello.
**SANTIAGO**: *Tell me, what's up*?
**CLASS**: *What's on*?
**SANTIAGO**: *Easy, going down there.  I'll see you like in an hour and a half*.

6

**CLASS**: *We're ready?*
**SANTIAGO**: Yup.
**CLASS**: Okay.
**SANTIAGO**: *All right*, bye.

Session #1108: 5:19 p.m.
[**SANTIAGO** called **CLASS**. The call was unanswered]

CLASS call to SANTIAGO

Session #1115: 5:23 p.m. (*Spanish portions synopsized by H.C.N.T.F. analyst in italics*)
**SANTIAGO**: Hello.
**CLASS**: Yo.
**SANTIAGO**: *Where are you?*
**CLASS**: Um, *give me a couple minutes, you're there already?*
**SANTIAGO**: *Yeah, I'm here. I'm going to the – I'll be in the barbershop. You're gonna take long?*
**CLASS**: Nah. *I'm like five minutes.*
**SANTIAGO**: *Ah, like five?*
**CLASS**: Yes.
**SANTIAGO**: *So, I'll wait for you here then.*
**CLASS**: Okay.
**SANTIAGO**: *All right.*

Massachusetts investigators believed, based upon the totality of the circumstances, that during this approximate time period, CLASS and SANTIAGO likely met for the exchange of cocaine.

    14.    On December 13, 2018, Massachusetts law enforcement officers obtained a court order authorizing cellular phone "pings" of the telephone associated with the 9301 number. When the Massachusetts investigators began receiving the "ping" locations on December 14, 2018, the telephone associated with the 9301 (the "9301 telephone") was in Claremont, New Hampshire. On December 15, 2018, "pings" started in Claremont before the 9301 telephone traveled from Claremont to Springfield, Massachusetts, and then returned to New Hampshire. At approximately 3:06 p.m., a "ping" indicated the 9301 telephone was in Springfield, Massachusetts. At approximately 3:22 p.m., a "ping" indicated the 9301 telephone was in the area of

in Springfield. Massachusetts investigators later determined this address to be associated with APONTE's grandmother. The next "ping" was at approximately 3:52 p.m., in the area of Hatfield, Massachusetts, north of Springfield. These short trips are consistent with typical narcotics deliveries, based upon investigators' training and experience assigned to this investigation.

*Santiago Uses the Target Vehicle to Travel to Massachusetts*

15. On December 15, 2018, a uniformed member of the Massachusetts State Police was parked on the shoulder of Interstate 91 northbound monitoring vehicles from the State of New Hampshire during a time period in which the "ping" of the 9301 telephone was showing the telephone traveling northbound in the same area. One of the vehicle registrations that was documented by the trooper was the Target Vehicle.

16. On December 19, 2018, New Hampshire State Police Trooper Charles Newton obtained warrants from the 5th Circuit Court- Claremont Division to obtain location information for the 9301 telephone.

17. Using the information obtained by the warrants, law enforcement officers were able to confirm that the 9301 telephone was inside the residence of             New Hampshire, on December 21, 2018. Investigators observed two vehicles in the driveway at that time. The first was the Target Vehicle- a 2011 blue Nissan Altima bearing New Hampshire registration 3817792, VIN 1N4AL2AP1BC174704, registered to APONTE. The second was a 2016 white Ford F-150 bearing New Hampshire registration 4226643, VIN 1FTEW1EG9GFB28485 (the "Ford F-150"), registered to APONTE and SANTIAGO. Both vehicles are registered to             .

18.     According to the tax card on file with the City of Claremont, _____ is a single family dwelling purchased in July of 2017 by APONTE and SANTIAGO.

19.     At approximately 11:45 a.m., the Target Vehicle left the residence with a male driving the vehicle. The male was subsequently identified by investigators as SANTIAGO. Law enforcement officers observed the Target Vehicle turn onto Citizen Street in Claremont and stop in the middle of the road for a couple of minutes. Investigators suspected that SANTIAGO was "cleaning himself" of any possible surveillance being conducted, as there was no traffic explanation for this maneuver. The Target Vehicle then turned around and continued out Main Street towards Vermont. Once in Weathersfield, Vermont, investigators observed the Target Vehicle pull into a "pull off" on Route 5 and meet up with another vehicle for a short duration (approximately less than two minutes). The Target Vehicle then exited the pull off driving northbound on Route 5. Investigators followed the vehicle as it pulled into the Mobil gas station on Route 131 in Weathersfield. SANTIAGO parked the Target Vehicle, exited the vehicle, looked around, and re-entered his vehicle. SANTIAGO did not purchase gas or go into the store. Investigators believe that SANTIAGO was again "cleaning himself" of any possible surveillance being conducted. Surveillance was terminated at this point and SANTIAGO proceeded onto Interstate 91 southbound.

20.     Using information obtained from the warrants on the 9301 telephone, investigators were able to confirm that the telephone was in the Target Vehicle on December 21, 2018, when it traveled from New Hampshire to Interstate 91 Southbound in Vermont.

21. On December 24, 2018, location information showed that the 9301 telephone traveled south on Interstate 91 in Vermont to Massachusetts, and traveled to Claremont, New Hampshire

the following day. Investigators observed the Target Vehicle traveling south on Interstate 91 in Holyoke, Massachusetts on December 24, 2018, and observed the Target Vehicle in Springfield, Massachusetts that same day. Massachusetts investigators observed SANTIAGO and APONTE in the Target Vehicle on Maple Street in Springfield.

*Santiago Uses the Ford F-150 to Travel to Massachusetts*

22. On January 8, 2019, location information showed that the 9301 telephone traveled south on Route 91 to Massachusetts. At approximately 5:40 p.m., investigators observed the Ford F-150 traveling southbound on Interstate 91 into Massachusetts. Investigators followed the Ford F-150 to Springfield, Massachusetts, where they observed a person whose appearance was consistent with the known physical appearance of SANTIAGO exit the vehicle walk from to the rear porch of a residence. The male believed to be SANTIAGO was seen carrying a plastic shopping bag that appeared to be half full as he entered. Approximately 45 minutes later the male believed to be SANTIAGO exited, without a shopping bag, and entered the Ford F-150.

*Postal Service Seizes a Package Containing 500 Grams of Cocaine*

23. On December 31, 2018, the United States Postal Service intercepted a package addressed to David NICHOLS of ⬛⬛⬛⬛⬛⬛ Vermont. With NICHOLS's consent, investigators opened the package and found it to contain approximately a half-kilogram (500 grams) of a substance that field-tested positive for cocaine.

24. The last known telephone number that NICHOLS provided to police in Vermont was ⬛⬛⬛-⬛⬛⬛-266. Toll records show that this number had approximately 1,780 communications with the 9301 number between November 26, 2018 and January 1, 2019. NICHOLS's criminal history includes a previous arrest for possession of crack cocaine in Claremont, New Hampshire

10

in 2006, and a conviction for control premises/vehicle where drugs are kept in Sullivan County, New Hampshire in 2007.

*A Confidential Source Provides Information Regarding a Claremont Cocaine Source*

25. On January 25, 2019, investigators met with a confidential source (CS) who advised that the CS could purchase cocaine/crack cocaine from Belinda DANIELS (PERIGNY) who resides in White River Junction, Vermont. The CS stated that PERIGNY's phone number is 8095. Toll records show that this number had approximately 447 communications with the 9301 number between November 26, 2018 and January 1, 2019. This CS has cooperated with law enforcement in the past and was deemed to be credible and reliable in the past investigations. The CS is cooperating with law enforcement as a mercenary in an effort to better the CS's community.

26. The CS indicated that the CS knows PERIGNY's source of supply to reside in Claremont. The CS advised that the source is a Hispanic male only known as "Papi," and that Papi's wife or girlfriend is a nurse. The CS has never personally met this male. The CS stated that the CS would ride with PERIGNY from Vermont to Claremont. PERIGNY would drop the CS off in a parking lot, usually the Subway on North Street or the Tractor Supply on Main Street. PERIGNY would leave for between five and fifteen minutes to purchase cocaine from her supplier. The CS advised that the CS has known PERIGNY since the spring of 2018 and that the CS has purchased personal use amounts of cocaine on approximately a dozen occasions from PERIGNY.

11

*Undercover Law Enforcement and CS Purchase*
*of Crack Cocaine from SANTIAGO through PERIGNY*

27.     On January 31, 2019, at approximately 3:10 p.m., a law enforcement officer, acting in an undercover capacity, and the CS, under surveillance by other investigators, picked up PERIGNY in White River Junction, Vermont and together the three traveled to Claremont, New Hampshire to purchase crack cocaine from PERIGNY's source of supply.  At approximately 3:39 p.m., investigators observed the undercover officer, the CS, and PERIGNY park on the west side of the Mobil gas station, 247 Main Street, in Claremont.  Investigators observed PERIGNY get out of the vehicle she was riding in, walk behind the Mobil, and get into the front passenger's seat of SANTIAGO's Ford F-150.  At approximately 3:43 p.m., investigators observed PERIGNY get out of SANTIAGO's Ford F-150 before investigators positively identified SANTIAGO as the operator and sole occupant of the Ford F-150 as SANTIAGO departed the area.  Surveillance of SANTIAGO was terminated at that time.  Investigators later confirmed PERIGNY purchased $200.00 worth of suspected crack cocaine from SANTIAGO on behalf of the CS and undercover officer.

28.     Based on my training, education, and experience, the events described above provide probable cause that SANTIAGO is distributing controlled substances in the state of New Hampshire and Massachusetts, and using the Target Vehicle and his Ford F-150 to further his drug distribution.

29.     Investigators continue to learn more about the methods and routes used by SANTIAGO and are attempting to identify others who are involved with SANTIAGO's drug trafficking activities.  A vehicle tracker would expand the limited capabilities of this investigation and would be extremely valuable in assisting investigators to effectively follow SANTIAGO's

movements and decrease the chance of detection. I and other investigators plan to utilize this information to assist with the possible interdiction of future shipments of controlled substances, as well as to assist in identifying sources of supply, customers, stash locations, and locating other evidence that will assist us in learning the full nature and scope of this criminal operation.

## INSTALLATION AND MONITORING OF THE TRACKING DEVICE

30. I make this affidavit in support of an application for a search warrant authorizing the installation and use of a tracking device, for 45 days, in or on the Target Vehicle. In addition, because individuals who are involved in the distribution of controlled substances are keenly aware of the presence of law enforcement, I believe that if law enforcement were required to place the tracking device on the Target Vehicle during the hours of 6:00 a.m. and 10:00 p.m., the targets of the investigation would likely observe the activity of law enforcement. Therefore, because there is reasonable cause to believe that the installation of the tracking device during the daytime hours of 6:00 a.m. to 10:00 p.m. would result in the targets' discovery of the presence of law enforcement, it is hereby requested that the Honorable Court allow for law enforcement to install the tracking device at any time in the day or night. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period of 45 days following installation of the device. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## REQUEST FOR SEALING

31. The warrant and accompanying affidavit and application in support thereof reveal an ongoing investigation. In order to avoid premature disclosure of the investigation, guard against

the flight of fugitives, and better ensure the safety of agents and others, I request that the Court seal these documents until further order of the Court, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office, and may be served on Special Agents and other investigative and law enforcement officers, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant.

### REQUEST FOR DELAYED NOTIFICATION

32. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I request that the Court delay notification of the execution of the warrant for a period not to exceed 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the investigation.

### CONCLUSION

33. WHEREFORE, your affiant respectfully requests that the Court grant the order authorizing Special Agents or Task Force Officers of the U.S. Drug Enforcement Administration or their authorized representatives, including, but not limited to, other law enforcement agents and technicians assisting in the above-described investigation, to install within 10 calendar days of the issuance of the requested warrant, a mobile tracking device/global positioning system (GPS) in or on the Target Vehicle identified in this affidavit; maintain, repair, and remove a mobile tracking device/global positioning system (GPS) in or on the Target Vehicle; to enter onto private property to effect said installation, maintenance, repair, and removal; to surreptitiously

enter the Target Vehicle to effect said installation, maintenance, repair, and removal; and to monitor the signals from the tracking devices, for a period of 45 days following the issuance of the Court's order, including signals produced from inside private garages and other locations not open to the public or visual surveillance, and signals produced in the event that the vehicle leaves the District of New Hampshire, but remains within the United States.

/s/ Galen E. Doud
Galen E. Doud
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on February  1 , 2019.

Andrea K. Johnstone
United States Magistrate Judge